IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRETT MICHAEL WEDEKIND,

       Plaintiff,

 v.                      OPINION and ORDER

KILOLO KIJAKAZI,               22-cv-91-jdp
Acting Commissioner of Social Security,

       Defendant.

---

  Plaintiff Brett Wedekind, appearing pro se, seeks judicial review of a final decision of the Social Security Administration finding him not disabled within the meaning of the Social Security Act. Wedekind contends that he is disabled because of numerous impairments, mainly degenerative disc disease and a shoulder injury. The administrative law judge (ALJ) concluded that even though Wedekind suffers from various physical and mental impairments, he is not disabled because he retains the capacity to perform a significant number of jobs in the economy, including housekeeping cleaner, cafeteria attendant, and small parts assembler.

  I conclude that the ALJ erred by failing to explain how she resolved evidence that Wedekind had substantial limitations in his ability to sit for prolonged periods and by relying on evidence of Wedekind's daily activities and attempts at recreation. I will remand the case for further proceedings.

BACKGROUND

Wedekind sought benefits based on physical and mental impairments, alleging disability beginning November 28, 2016, stemming from an automobile accident in 2015.[1] R. 17. The parties agree that Wedekind's date last insured was March 31, 2018. Wedekind ultimately had spinal fusion surgery and shoulder surgery in 2020. Wedekind's claim was denied initially and on reconsideration, and Wedekind requested a hearing before an ALJ. Wedekind appeared at that hearing with counsel.

In a written decision, the ALJ found that Wedekind had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, left hip cam deformity, and obesity. R. 20. The ALJ considered various other physical and mental impairments—liver cirrhosis, acquired hypothyroidism, right carpal tunnel syndrome, right cubital syndrome, biceps tendinosis, C5 radiculopathy, sleep apnea, right hip arthralgia, depression, anxiety, attention-deficit hyperactivity disorder, and alcohol use disorder—and found that they were not severe impairments. R. 19–20. The ALJ determined that Wedekind did not meet the criteria for any listed disability. R. 21–22. The ALJ ascribed to Wedekind the residual functional capacity (RFC) to perform light work, with additional limitations on climbing, stooping, kneeling, crouching, crawling, and reaching overhead. R. 23. Relying on the testimony of a vocational expert, the ALJ concluded that Wedekind could perform a significant number of jobs available in the national economy, including housekeeping cleaner, cafeteria attendant, and small parts assembler. R. 31. The Appeals Council denied review, R. 13, so the ALJ's decision became the final decision of the commissioner.

---

[1] Record cites are to the administrative transcript located at Dkt. 5, using the Social Security Administration's Bates numbering.

On appeal, this court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

ANALYSIS

Wedekind is proceeding without counsel, so I read his submissions generously and I do not expect the formality that a lawyer's submissions would have. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[a] document filed *pro se* is to be liberally construed" (internal quotation omitted)). Nonetheless, Wedekind must still present specific arguments showing that the ALJ's decision was unsupported by substantial evidence. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) ("[W]e must be able to discern cogent arguments in any appellate brief, even one from a pro se litigant."); *McLachlan v. Astrue*, 392 F. App'x 493, 494 (7th Cir. 2010) (dismissing pro se appeal because the brief did "not refer to facts in the record or contain an argument consisting of more than a generalized assertion of error").

Wedekind's brief-in-chief largely fails to meet these standards. For instance, Wedekind contends that "[t]he combined impact of all of the Claimants Medical Conditions, both physical and mental, have clearly impaired his ability to work productively in a regular and consistent manner" and "[t]he ALJ failed to properly weigh the effect the combined multiple conditions had on the claimant." Dkt. 10, at 1. Wedekind doesn't support these contentions

3

by explaining what conditions the ALJ ignored and how that would have affected the ALJ analysis. The ALJ did discuss the impact of Wedekind's various maladies on his mental health at length in the "impairment" part of the opinion. If what Wedekind means is that the ALJ did not specifically address each of the various maladies mentioned in the impairment part of the opinion later in the RFC analysis, there is a good reason for that: the ALJ focuses largely on Wedekind's back and shoulder problems because those were the problems that Wedekind's counsel focused on in a brief to the ALJ before the hearing, *see* R. 333 ("As is described below, Mr. Wedekind has suffered for years with chronic pain in his lower back and right shoulder . . . ."), and again at the hearing itself. And the treating medical providers' assessments discussed in that portion of the opinion are all related to his back, shoulder, and hip problems. It was appropriate for the ALJ to concentrate on the specific problems that Wedekind himself stressed during the proceedings.

Wedekind gets more specific by contending that the ALJ "failed to provide proper weight" to three assessments made by his treating medical providers, who all considered Wedekind to have greater limitations than those the ALJ found. Dkt. 10, at 2. For claims like Wedekind's filed after March 26, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Rather, the ALJ is to consider the following factors when determining the proper weight to apply to the opinion or prior administrative finding: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) specialization; and (5) other factors brought to the attention of the Commissioner. 20 C.F.R. § 416.920c(c).

The ALJ must consider all of these factors, but she need explain only how she considered supportability and consistency. § 416.920c(b).

Wedekind does not discuss his providers' opinions in these terms or specifically identify how the ALJ erred in discounting his three providers' opinions while concurring with those of the state agency's non-examining physicians. But my review of the ALJ's opinion reveals a glaring problem. Throughout the opinion, the ALJ notes that Wedekind reports having difficulty with prolonged sitting. The medical record is replete with the type of treatments indicating a back problem that would make prolonged sitting difficult. His medical provider all opined that he would have difficulty with prolonged sitting.

For much of the opinion, the ALJ seems to accept that Wedekind cannot sit for prolonged periods. In particular, the ALJ discounted the opinion of Wedekind's physician, James Shropshire, that Wedekind could not stand for prolonged periods by stating that the medical records didn't support the idea that Wedekind had problems with prolonged standing; the records focused on problems with prolonged sitting. R. 28. The ALJ also found "partially persuasive" a letter from interventional spine specialist Dr. Jared Greenberg, who opined that Wedekind was limited to sedentary work while using an adjustable standing desk because he could not stand or sit for prolonged periods of time. The ALJ discounted this opinion in part because Greenberg was not specific enough about precisely how long Wedekind could sit or stand in an 8-hour day, but the ALJ did not reject the idea that Wedekind had a problem with prolonged sitting.

The ALJ found most persuasive the opinions of state agency non-examining physicians William Fowler and Michelle Holmes, who opined that Wedekind could sit for a total of about six hours a workday. But the ALJ didn't explain why these opinions were more persuasive than

5

Wedekind's treating providers' opinions even though she discounted some of the non-examining physicians' other opinions, stating "evidence including contemporaneous treatment records and claimant's presentation throughout the hearing also support the somewhat greater restrictions in the [ALJ's] residual functional capacity findings." R. 29. In other words, she doesn't explain why she refuses to accept some of Fowler's and Holmes's conclusions yet agrees with their conclusion that Wedekind can sit for prolonged periods. Similarly, the ALJ's RFC places limitations on Wedekind climbing, stooping, kneeling, crouching, crawling, and reaching overhead, but not on sitting, despite the evidence for such a problem in the record. The ALJ does not adequately explain this discrepancy.

An ALJ's failure to address a claimant's inability to sit ordinarily arises in appeals involving an RFC of sedentary work. *See, e.g.*, *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020). But based on the ALJ's questioning of the vocational expert at Wedekind's hearing, it seems that it could pose a problem for the light-work options discussed in this case. The ALJ asked the vocational expert the following question:

> Q: And if I were to keep those limitations in place . . . but I'm going to add that this individual requires work that can be done either sitting or standing. So a true sit/stand at will option. Would that change your answer [about the jobs available to Wedekind], and if so, how?
>
> A: Yes, I would change my answer. Typically, with these light jobs, a sit/stand at will is not—these jobs could not be performed.

R. 80. I cannot affirm the ALJ's decision given her failure to explain why she left out a sitting limitation. On remand, the ALJ should address the relevant evidence and discuss whether it warrants additional limitations on Wedekind's ability to work or on the jobs available to him.

There is a second issue. Throughout her opinion, the ALJ concludes that Wedekind's condition wasn't as bad as he or his treating providers say it was because he engaged in various

6

activities of daily living and even recreational activities. For instance, the ALJ concluded her RFC discussion by noting that Wedekind cared for himself and his elderly father, shopped in stores, performed housekeeping tasks, and used a riding lawnmower. R. 30. She also stated the following:

> Contemporaneous treatment records for the period include claimant's own reports of significant physically and otherwise demanding activities ranging from climbing ladders to build tree forts to snowmobiling, ice fishing and leading camping trips.

*Id.*

The court of appeals has "repeatedly warned against equating the activities of daily living with those of a full-time job." *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015). This is both because an ability to perform a particular activity may not translate into an ability to work full time and because a claimant may perform an activity at home only because he has no other choice. *E.g., Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("Gentle must take care of her children, or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts."); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) ("minimal daily activities" such as preparing simple meals, weekly grocery shopping, taking care of family member, and playing cards "do not establish that a person is capable of engaging in substantial physical activity"). The ALJ did not explain how the activities of daily living listed above reflect Wedekind's ability to perform full-time work as opposed to him doing tasks for which there is no other choice.

Recreational activities are often a different story because they may reflect voluntary activity on the part of the claimant. *See Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022) (plaintiff's ability to garden undercut her claimed limitations because, even though she stated she could garden only rarely because it caused pain, "she nevertheless engaged in a voluntary

7

activity that would have aggravated the conditions she alleges were disabling."). But some of the activities the ALJ cites here occurred before the alleged onset of Wedekind's disability, and others do not actually reflect Wedekind as being capable of physically demanding activities. As Wedekind explained at the hearing and in his reply brief, most of these attempts at recreation flopped because of his physical limitations:

- "Claimant told [a doctor] that he had recently fallen from a ladder while building a tree fort for his 7 and 8 year old children."

- "I had to have help setting up my tent, and when it came time to pack up the tents, I was the last person left in the park, and I was unable to do it myself. I ended up having to have my sister in MacFarland to come all the way to the campground to help me pack up my tent and supplies."

- "I attempted to ride [a snowmobile] on the flat lake this winter. . . . I found that the trail riding is just unbearable."

- "I had to have my sons help changing the tires [of a car at a performance-driving event at which Wedekind attempted to instruct] and that's how I was even able to do that much. And I was in pain for three days after."

R. 24, 71, 75.

Given Wedekind's stated difficulties attempting to engage in these activities, I cannot say that the ALJ had substantial evidence supporting this aspect of her opinion. On remand, the ALJ should reconsider whether and how to use evidence of Wedekind's activities in her analysis.

ORDER

IT IS ORDERED that the decision denying Brett Wedekind's application for disability insurance benefits is REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered March 31, 2023.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge